## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RICKY ABBOTT,**

        **Plaintiff,**

**v.**                                   **Civil Action No. 1:12cv176**
                                         **(Judge Keeley)**

**WILLIAM YURCINA, Administrator,**
**Ohio County Correctional Center;**
**DR. HAHN, PrimeCare Medical, Inc.,**
**Ohio County Correctional Center;**
**DEBBIE MINNIX, Warden, Pruntytown**
**Correctional Center; Dr. John Doe,**
**Pruntytown Correctional Center;**
**MARVIN C. PLUMLEY, Warden,**
**Huttonsville Correctional Center;**
**DR. PROCTOR, Huttonsville Correctional**
**Center; and TRISTAN TENNEY,**
**Medical Director, Huttonsville Correctional**
**Center,**

        **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

        The *pro se* plaintiff initiated this civil rights action pursuant to 42 U.S.C. § 1983 against the

above-named defendants on December 11, 2012, by filing a complaint along with a motion for leave

to proceed *in forma pauperis (*"IFP"), a signed Consent to Collection of Fees from Trust Account,

and a Motion for Appointment of Counsel. The Clerk of Court issued a deficiency notice the same

day, directing the plaintiff to file his complaint, his IFP motion and Consent to Collect on court-

approved forms, and to file a copy of his Prisoner Trust Account Report with its Ledger Sheets by

January 2, 2013.  By Order entered December 13, 2012, plaintiff's motion for court-appointed

counsel was denied. On December 27, 2012, the plaintiff corrected his deficient pleadings, and filed

a Motion for Leave of Court to Accept the Original Complaint as an Amended Complaint. By Order

entered January 2, 2013, the plaintiff was granted permission to proceed as a pauper and directed to

pay an initial partial filing fee ("IPFF"). By separate Order entered the same day, plaintiff's Motion for Leave of Court to Accept the Original Complaint as an Amended Complaint was denied; instead, the court construed his original complaint as a memorandum in support of his court-approved form complaint. On February 27, 2013, plaintiff paid the required fee.

On March 6, 2013, the undersigned conducted a preliminary review of the file, and directed the defendants to answer the complaint. Plaintiff was given an additional 30 days, or until April 5, 2013, in which to identify the defendant Dr. John Doe.[1]

On April 1, 2013, defendants Dr. Proctor ("Proctor") and Tristan Tenney ("Tenney") filed a Motion to Dismiss. Because the plaintiff is proceeding *pro se*, the Court issued a <u>Roseboro</u>[2] Notice on April 9, 2013.

On April 8, 2013, defendant Dr. Jerry M. Hahn ("Hahn") filed a Motion to Dismiss and Alternative Motion for Summary Judgment. Because the plaintiff is proceeding *pro se*, the Court issued a <u>Roseboro</u> Notice on April 9, 2013.

On April 9, 2013, defendants Debbie Minnix ("Minnix"), Marvin C. Plumley ("Plumley"), and William Yurcina ("Yurcina") filed a Motion to Dismiss. Again, because the plaintiff is proceeding *pro se*, the Court issued a <u>Roseboro</u> Notice on April 10, 2013.

The docket reflects that the copies of the Order to Answer and each of the three <u>Roseboro</u> Notices sent to the plaintiff by certified mail, return receipt requested, were returned as undeliverable.[3] Plaintiff has not filed responses to any of the defendants' dispositive motions.[4]

---

[1] Plaintiff never provided identifying information for Dr. John Doe, thus, he was never served.

[2] <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a *pro se* plaintiff of his right to file material in response to a motion for summary judgment).

[3] <u>See</u> Dkt.# 51, 52, and 53.

[4] A review of the record indicates that the plaintiff was released from HCC on March 1, 2013 and is now on parole. (Dkt.# 38-1 at 9). As of the date of this Report and Recommendation, the plaintiff has not provided the court with an updated mailing address.

This case is before the undersigned for a Report and Recommendation on the pending motions.

## II. Contentions of the Parties

### A. The Complaint

The plaintiff, who was incarcerated in the Huttonsville Correctional Center ("HCC") in Huttonsville, West Virginia, when he initiated this action, alleges that the West Virginia Division of Corrections ("WVDOC") routinely engages in an unconstitutional, systemic pattern of deliberate indifference to inmates' serious medical needs. He contends that WVDOC habitually and purposefully delays providing needed care for inmates, to avoid incurring its costs, because prison overcrowding has resulted in insufficient funding to pay for inmates' medical needs. Plaintiff contends the WVDOC accomplishes this by forcing inmates to 1) repeatedly complain of the same condition before receiving any diagnosis and treatment; 2) repeatedly charging inmates co-pay fees for the same complaint, in an effort to frustrate the process; and 3) by providing unnecessary and ineffective medication to mask symptoms, instead of actually attempting to identify and diagnosis underlying conditions.

While acknowledging that he cannot argue on behalf of other inmates, plaintiff alleges that his Eighth and Fourteenth Amendment rights were violated while he was incarcerated at the Ohio County Correctional Center ("OCCC") from approximately April – November 2010; the Pruntytown Correctional Center ("PCC") from approximately November, 2010 – February, 2011, and at the HCC from about March, 2011, until the time that he filed his complaint. He avers that he was personally injured by this pattern of neglect when the defendants ignored his symptoms of serious choking from esophageal obstruction for over two years, from April 13, 2010 [sic],[5] until September, 2012, because

---

[5] The limited medical records plaintiff attached to his original complaint (later construed as a memorandum in support) indicate that the date he first complained of symptoms and presented for treatment at OCCC was April 30, 2010. Dkt.# 1-1 at 2-3.

he sustained unspecified permanent damage to his esophagus and larynx, uncorrectable in the surgery he ultimately received at that time.

The plaintiff asserts that he has exhausted his administrative remedies with regard to his claims, averring that he attached a copy of his "fully exhausted grievance" to his original complaint.[6]

As relief, the plaintiff requests injunctive relief, in the form of a Declaratory Judgment to declare the WVDOC's "treatment delay policy" unconstitutional, that prison overcrowding interferes with inmates' right to adequate medical treatment, and a directive to the prison "to follow standard medical practice to identify and treat inmate ailments." Further, he requests unspecified compensatory and punitive damages.

## B.  Defendant Dr. Proctor, HCC, and Tristan Tenney, Medical Director, HCC

In their motion, the defendants Proctor and Tenney assert that the complaint should be dismissed, or judgment granted in their favor, because the plaintiff has failed to state a claim upon which relief can be granted against either of them. Defendants contend that plaintiff makes no specific allegation against defendant Tenney, and the allegations against Dr. Proctor do not support a claim for deliberate indifference.

## C.  Dr. Jerry M. Hahn's Motion to Dismiss and Alternative Motion for Summary Judgment

Dr. Hahn's motion contends that the plaintiff's complaint should be dismissed and judgment granted in his favor because:

1) he was a contract physician for Primecare, Inc. at the OCCC, not its employee;

2) as a contract physician at the OCCC, he stood in the shoes of a state actor and is entitled to good faith qualified immunity;

3) plaintiff's allegations of specific instances of deliberate indifference occurring between April through September, 2010, are barred by the applicable West Virginia two-year statute of limitations; and

---

[6] There is no copy of a "fully exhausted" grievance attached to either the original complaint, now construed as a memorandum in support, or the court-approved form complaint. However, plaintiff lists grievance numbers and dates for all three levels of administrative exhaustion, suggesting that he did in fact, exhaust some sort of claim. (Dkt.# 11 at 5).

4) despite plaintiff's claim that he was incarcerated at the OCCC from approximately April – November 2010, WVDOC records show plaintiff was at the OCCC from November 20, 2009 until June 8, 2010.

5) Dr. Hahn saw plaintiff for numerous medical problems during plaintiff's stay at the OCCC; however, plaintiff only sought medical attention for the complaint he is making in his complaint once, on April 30, 2010. He was given an appropriate prescription and did not return for this complaint again while he was at OCCC.

6) Dr. Hahn denies that he was ever deliberately indifferent to any of plaintiff's medical needs, serious or otherwise;

7) plaintiff has failed to state a claim upon which relief can be granted; and

8) no genuine issue of material fact exists with respect to plaintiff's allegations and thus Dr. Hahn is entitled to summary judgment as a matter of law.

9) Dr. Hahn reserves the right to file further motions addressing whether plaintiff exhausted his administrative remedies over the claims raised in his complaint.

## D. **Debbie Minnix, Warden, PCC; Marvin C. Plumley, Warden, HCC; and William Yurcina, Warden, OCC**

The defendants (collectively, "the Warden defendants") contend that plaintiff's complaint should be dismissed because:

1) plaintiff has failed to state a claim upon which relief can be granted;

2) plaintiff's complaint alleges dissatisfaction with the medical decisions made for him by others, not the Warden defendants;

3) the defendants, as wardens of their respective facilities, do not make medical decisions for inmates and do not supervise the defendant medical professionals, who are employees of independent contractors, not under the control of the Warden defendants;

4) the Warden defendants, as non-medical personnel, are entitled to rely on the opinion of medical staff regarding the proper treatment of inmates;

5) supervisors like the Warden defendants can only be held responsible for the actions of subordinates if the subordinates acted pursuant to an official policy or custom for which the supervisors are responsible;

6) plaintiff's claims are based on the alleged misconduct of defendant medical personnel who were not supervised by, or subject to, any of the Warden defendants' policies; any claim asserted against the Warden defendants based on a theory of *respondeat superior* must be dismissed;

5) the Warden defendants, as government officials performing discretionary functions, are entitled to qualified immunity from all liability for civil damages; and

6) the Warden defendants reserve the right to assert all applicable defenses, including that plaintiff may have failed to exhaust his administrative remedies with regards to his claims.

### III.  Standard of Review

**A.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id.  (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id.  Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass

v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." (Id) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere

speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. V. Zenith Radio Corp</u>., 475 U.S. 574, 587-88 1986).

## IV.   Analysis

42 U.S.C. §1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. <u>Rendall-Baker v. Kohn</u>, 547 U.S. 830, 838 (1982).

## A.  Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that from April - November 2010, he was incarcerated at the OCCC. On April 13, 2010, he made an emergency visit to "medical," complaining of choking.  He contends that the nurse on duty "deferred" him to see a doctor until April 22, 2010; he saw defendant Dr. Hahn on April 22, 2010, but that Hahn made no diagnosis and provided no medical treatment other than Pepto Bismol for an unrelated stomach ailment.  He alleges he returned to medical on April 29th and again on April 30th, 2010, for the same complaint, and that finally, Hahn "described [sic] . . . a ninety day pain reliever in order to hide the symptoms" of his painful throat obstruction, advising him that his defendant Yurcina had denied his request for a diagnosis for possible treatment "per policy

decision."[7]  He avers that he repeatedly returned to the OCCC's medical department from April – September, 2010, for throat pain, multiple choking incidents, and severely painful swallowing, and that during all those months, Hahn never did anything to diagnose or treat his painful throat condition.

Plaintiff avers that in November, 2010, he was transferred to PCC, where he "immediately advised" a John Doe doctor and the Wexford Health Sources[8] of his painful,  untreated throat condition.  He alleges that on November 8, 2010, he went to medical after choking on food,[9] was seen by a nurse and referred to a doctor who saw him but provided no treatment.  He contends that he was seen again in medical by a nurse on November 14, 2010, for complaints of "constant choking and agonizing [throat] pain;" was scheduled to see the doctor later; advised by the nurse to take smaller bites of food; and the kitchen staff was directed to give him more time to eat, but only in "a onetime deal."[10]  He avers he was seen on November 17, 2010, by a John Doe doctor, who took an x-ray of his cervical spine but performed no tests to examine his esophagus "where the problem was actually located."  He alleges he returned to PCC's medical unit on November 24, 2010, for a complaint of agonizing pain and facial swelling, requesting a diagnosis and treatment, an incident he contends was "apparently reported to [the John Doe doctor] . . . on November 29th, 2010,"  but that throughout all of November, 2010, the John Doe doctor did nothing to diagnose his problem or treat his pain.  On December 1, 2010, however, the John Doe doctor ordered an x-ray of his throat area, which showed "Left fibrotic scarring and/or atelectasis."  On or about December 4, 2010, the John

---

[7] Dkt.# 1 at 6.

[8] Although plaintiff refers to Wexford Health Sources as "[h]ereinafter "Defendant WHS,"" he did not name Wexford as a defendant in this action and thus, Wexford has not been served. (Dkt.# 1 at 6).

[9] The single page of Wexford Health Sources, Inc. record plaintiff attaches to his original complaint, later construed as a memorandum in support, do not support this allegation. On November 8, 2010, the RN merely noted "I/M cleared medically re: move to U24." There is no mention of a complaint of choking or a doctor's examination. (Dkt.# 1-2 at 2).

[10] The single page of Wexford Health Sources, Inc. record plaintiff attaches to his original complaint, later construed as a memorandum in support, supports this allegation.  (Dkt.# 1-2 at 2).

Doe doctor ordered a third x-ray, which, although it was "negative for any serious problems," it noted that his "diaphragm was not included on erect view and therefore, this is not adequate for evaluation of free air." Plaintiff contends that despite the fact that this third x-ray was inadequate, the John Doe doctor did nothing further to diagnose or treat his throat problem during the remainder of his time at PCC, or until February, 2011. He alleges that the John Doe doctor admitted to him that "per PCC policy, as enforced by Defendant Debbie Minnix," his throat pain was not considered serious enough to warrant referral to an outside specialist.

Plaintiff contends that from about February, 2011 through the time he filed his complaint in December, 2012, he was housed at the HCC. He alleges that upon arrival there, he immediately reported his "throat pain due to a foreign obstruction" to the medical department, and urged defendant Dr. Proctor to review his history of the same. After doing so, Dr. Proctor ordered a modified barium swallow, performed on April 20, 2012 at the Davis Memorial Hospital. Esophageal abnormalities, with slowed peristalsis and interference with swallowing, were found, and a recommendation was made to refer plaintiff to a gastrointestinal ("GI") specialist for further testing and treatment. Plaintiff contends that on May 23, 2012, defendant Proctor advised him that he had made a recommendation to defendant Warden Plumley to send plaintiff to a GI specialist. Plaintiff alleges that he returned to HCC's medical unit on June 4, 2012, with recurrent symptoms of "choking, pain, swelling and drainage" from his throat obstruction, and was advised by "the HCC defendants" that a decision had been made to deny him treatment, in light of his possible impending parole on June 21, 2012. Plaintiff was denied parole on June 21, 2012. He returned to medical on or about July 10, 2012 for the same complaints. He alleges he filed a grievance regarding the policy of enforced medical care delay he had received at OCCC, PCC and HCC, on July 12, 2012.

Plaintiff contends that the HCC defendants, "realizing that [he] . . . would not make parole . . . acting by Order of Defendant Plumley[,] decided to pay for [his] . . . treatment." Accordingly, on or about July 13, 2012, he was finally scheduled to see a GI specialist originally recommended in the

April 20, 2012 barium swallow report.  He received a response to his July 12, 2012 grievance around July 17, 2012, advising him that he was scheduled for the appointment.  He alleges that around September, 2012, he was finally sent out for "diagnosis, treatment, and surgery to remove the painful foreign obstruction" from his throat, but that although the surgery was successful, his "voice box and esophagus" were permanently damaged by the delay in treatment.

1. **Defendant Dr. Jerry M. Hahn, Primecare Medical, Inc., Ohio County Correctional Center**

As noted in his Motion to Dismiss and Alternative Motion for Summary Judgment, defendant Hahn is a licensed medical doctor, who became a contract physician, not an employee of PrimeCare Medical of West Virginia, Inc., at the OCCC on January 23, 2001. In support of his motion, defendant Hahn has submitted an affidavit (Dkt.# 38-1) that summarizes the plaintiff's medical care at the  OCCC.

Dr. Hahn first contends that despite plaintiff's claim that he was incarcerated at the OCCC from approximately April – November 2010, WVDOC records show plaintiff was actually at the OCCC from November 20, 2009 until June 8, 2010.[11]

Dr. Hahn's affidavit avers the plaintiff was seen in OCCC's medical department or its Chronic Care Clinic, either by him, his physicians' assistant, or the nursing staff for numerous medical problems unrelated to the claims in the complaint during his stay there.[12]  However,  Hahn avers that the first and only date on which the plaintiff ever complained of gagging, choking or difficulty swallowing while at OCCC was on April 30, 2010, not April 13, 2010, as plaintiff alleges

---

[11] Attached to his Motion is a copy of the WVDOC's "Movement List" for plaintiff, supporting Dr. Hahn's position. Dkt.# 38-1 at 9 – 10.

[12] The plaintiff has provided very few of his medical records.  Dr. Hahn has provided none. Nonetheless, from a review of the limited record before the undersigned, among other things, it appears the plaintiff was seen at the OCCC for diarrhea; painful calluses on the bottom of his feet; muscle soreness from lifting; a recurrent rash and dry skin in his ears; a boil on his right forearm, and a wound to his left lower leg.  Dkt.# 38-1, ¶9 - 15, at 3 - 5.

in his complaint.[13]  Hahn denies that on April 13, 2010, plaintiff was "deferred" to be seen for choking until April 22, 2010, or that plaintiff saw Hahn for the choking issue on that April 22, 2010, but that Hahn made no diagnosis and provided no treatment other than Pepto Bismol for an unrelated stomach ailment.[14]  Hahn also disputes plaintiff's claim that he returned on April 29, 2010, again complaining of choking.[15]  Hahn does admit that plaintiff was seen for the difficulty swallowing on April 30, 2010.  Hahn avers that plaintiff was seen that day by an LPN, to whom he reported feeling as though he had a lump in his throat causing him to gag when eating,[16] a problem he said had begun "years ago." He also reported a history of hiatal hernia.[17] The LPN spoke by phone with Dr. Hahn, who, based on the reported history and complaints, provisionally diagnosed gastroesophageal reflux disease ("GERD") and prescribed a medication appropriate for that diagnosis: Prilosec, a proton pump inhibitor, to decrease the amount of stomach acid, not a pain medication "to hide the symptoms," as alleged by plaintiff.  Hahn avers that the plaintiff's OCCC medical records show that plaintiff began taking the Prilosec as ordered, and do not show that he ever complained of choking,

_____

[13] Dr. Hahn contends that plaintiff was seen on April 13, 2010, but that that visit was to have a tuberculosis PPD skin test read; he made no complaint of choking or a painful throat obstruction at that time.  (Dkt.# 38-1, ¶11 at 4).  The Inmate Non-Emergency Medical Services Request (Dkt.# 1-1 at 2) and the single page of PrimeCare medical record plaintiff attached to his original complaint, later construed as a memorandum in support, support this.  (Dkt.# 1-1 at 3).

[14] The single page of PrimeCare Medical record plaintiff attaches to his original complaint, later construed as a memorandum in support, supports Dr. Hahn's contention that plaintiff was seen that day only for a complaint of diarrhea, for which Pepto Bismol is an appropriate treatment.  (Dkt.# 1-1 at 3).

[15] The single page of PrimeCare Medical record plaintiff attaches to his original complaint, later construed as a memorandum in support, supports Hahn's contention; the plaintiff was seen on April 29, 2010 only for a complaint of recurrent dry skin in his ear, for which an otic steroid cream was ordered. (Dkt.# 1-1 at 3).

[16] The single page of PrimeCare Medical record plaintiff attaches to his original complaint, later construed as a memorandum in support, supports this contention. The record indicates that this was plaintiff's first complaint of acid reflux, gagging, and feeling like food was stuck in his throat. (Dkt.# 1-1 at 3).

[17] The note regarding this visit is at the bottom of the single page of PrimeCare Medical record plaintiff attached to his original complaint, later construed as a memorandum in support.  The record indicates plaintiff reported "reflux" but did not say how long he had had the symptoms.  (Dkt.# 1-1 at 3).  Therefore, the information in Dr. Hahn's affidavit may be based on a subsequent page in plaintiff's medical records, records not before the undersigned.

gagging or difficulty swallowing again, before his transfer to another facility, away from Dr. Hahn's care, on June 8, 2010.[18]  The plaintiff was transferred to PCC on that date.[19]

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[20]

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of

---

[18] Affidavit of Jerry M. Hahn, M.D., Dkt.# 38-1, ¶8 – 24 at 3 – 7.  The single page of PrimeCare medical record provided by the plaintiff ends with a terse note regarding the April 30, 2010 visit, and thus does confirm Dr. Hahn's contention that plaintiff stated his problem began "years ago;" had a hiatal hernia; never returned to medical for the allegation in the complaint again; or that he continued to take the Prilosec as ordered.  Dr. Hahn did not attach copies of any of plaintiff's medical records to his Motion.

[19] Dkt.# 38-1 at 9.

[20] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W.Va. 1995). And arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998).  A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition.  Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). Under the proper circumstances, a ventral hernia might be recognized as serious.  Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008).

deliberate indifference requires more than a showing of negligence. <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837.

A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." <u>Id.</u> at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." <u>See</u> <u>Morales Feliciano v. Calderon Serra</u>, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing <u>Brock v. Wright</u>, 315 F.3d 158, 162 (2d Cir. 2003)).

In the instant case, nowhere in the record do any of the parties identify the specific diagnosis given to the plaintiff. However, assuming *arguendo* the plaintiff has established that his esophageal condition is a serious medical condition, satisfying the objective component of his Eighth Amendment claim, he cannot satisfy the subjective component of his Eighth Amendment claim, because there is no evidence that either defendant Hahn or any of the medical staff at the OCCC treated him with deliberate indifference. The information supplied by the plaintiff and defendant Hahn indicates that plaintiff was promptly seen at sick call on the one and only time he made a

request for treatment for the allegation in his complaint while under Hahn's care.[21] Furthermore, he was given Prilosec, a proton pump inhibitor, which was appropriate for the provisional diagnosis of GERD, based on plaintiff's reported history and symptoms of reflux.

It is clear from a reading of the plaintiff's complaint, memorandum in support and attached medical records, that the substance of his complaint is that he believes that the esophageal surgery should have been performed sooner. Although he alleges it, plaintiff has provided no proof that the delay in surgery caused him any permanent harm.  Moreover, so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation. See Chance v. Armstrong, 143 F.3d 698, 703 (citing Dean v. Coughlin, 804 F.2d 207, 215 (2nd Cir. 1986) and Estelle, 429 U.S. at 106. "The constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves...." "[T]he essential test is one of medical necessity and not simply of desirability." Dean, 804 F.2d at 215 (citations omitted) (alterations in original). Furthermore, the medical care required by Estelle need not be the best possible care, it only has to be "reasonable" care. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977); see also Blanks v. Cunningham, 409 F.2d 220 (4th Cir. 1969); Edwards v. Duncan, 355 F.2d 993 (4th Cir. 1966). Inasmuch as there is no evidence in the record that the delay in receiving the surgery was harmful, or that the plaintiff was provided less than reasonable care, his Eighth Amendment Claim against defendant Hahn should be dismissed.

In addition, to the extent that the plaintiff may be seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

---

[21] Dkt.# 1-1 at 3.

When a medical negligence claim involves an assessment of whether the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

**§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions.**

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the Rules of Civil Procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D. W.Va. 2004).[22]

---

[22] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

With regard to the appropriate standard of care, plaintiff has completely failed to sustain his burden of proof. Plaintiff does not even assert, much less establish, the standard of care for the diagnosis or treatment of his unspecified esophageal condition. Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant(s)' breach of the duty of care. Moreover, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, even if this court has supplemental jurisdiction over the plaintiff's potential state law claims for medical malpractice, summary dismissal is appropriate.

Finally, even if plaintiff's claim against Dr. Hahn had not already failed for the many reasons stated *supra,* plaintiff's claim against Hahn is also barred by the two year statute of limitation for personal injury actions, set forth in W.Va. Code §55-2-12(b). It is undisputed[23] that the only complaint plaintiff ever made to Hahn regarding his esophageal issues was on April 30, 2010. It is clear from the record that plaintiff was transferred away from Hahn's care on June 8, 2010. He did not file his complaint until December 11, 2012, nearly seven and a half months after the two-year statute of limitations expired.

2. **Defendant Dr. Proctor and Tristan Tenney, Medical Director, Huttonsville Correctional Center**

Plaintiff contends that from about February, 2011 through the time he filed his complaint in December, 2012, he was housed at the HCC. He alleges that upon arrival there, he immediately reported his "throat pain due to a foreign obstruction" to the medical department, and urged defendant Dr. Proctor to review his history of the same. After Dr. Proctor ordered the April 20, 2012 modified barium swallow, the recommendation was made, presumably by the hospital radiologist, to refer plaintiff to a GI specialist for further testing and treatment. Plaintiff contends that defendant

---

[23] Although the medical records plaintiff attached to his original complaint, later construed as a memorandum in support, do not completely refute all of plaintiff's allegations and support all of Dr. Hahn's contentions, despite having been sent a Roseboro Notice, giving him an opportunity to respond to Dr. Hahn's dispositive motion, the plaintiff has not responded. He did not update his address with the court after he was paroled, and the Notice was returned as undeliverable.

Proctor advised him on May 23, 2012, that he had made a recommendation for the GI referral to defendant Warden Plumley. Plaintiff alleges that he did not receive approval for the referral until July 13, 2012, and was not actually seen and operated on until September, 2012. He contends that this delay caused permanent damage to his "voice box and esophagus" and was a result of an intentional policy of purposeful delay to save money.

The defendants contend that because the plaintiff did not arrive at HCC until February, 2011, most of the allegations in the complaint do not apply to them, because they occurred prior to that date. However, a review of the record indicates that the defendants' reliance on the plaintiff's contentions as to dates is misplaced. The WVDOC "Movement List" for plaintiff, attached to defendant Hahn's Motion to Dismiss and Alternative Motion for Summary Judgment, indicates that he was actually at HCC three times, from June 17, 2010 – November 5, 2010,[24] from March 23, 2011 – September 23, 2011, when he was transferred to Beckley Correctional Center ("BCC") for medical reasons,[25] and from October 14, 2011, when he was transferred back from BCC to HCC again, where he remained until he was paroled on March 1, 2013.[26]

However, the defendants are correct in their contention that the plaintiff has not made any allegation in his complaint against defendant Tenney. Even when liberally construed, plaintiff's complaint contains insufficient facts to support a finding of any constitutional violation by Tenney, let alone deliberate indifference. "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." Wise v Bravo, 666 F.2d 1328, 1333 (10th Cir. 1981). Accordingly, the plaintiff fails to state a claim upon which relief can be granted against Tenney, and Tenney should be dismissed with prejudice from this action.

---

[24] It would appear then, that some of plaintiff's allegations against Dr. Hahn were actually intended for Dr. Proctor. However, plaintiff did not allege that Dr. Hahn was deliberately indifferent to him prior to April, 2012.

[25] It is unclear what medical reasons prompted this transfer, because the record indicates that the surgery plaintiff underwent took place in September, 2012, a year later, a fact which is supported by the WVDOC's "Movement List," attached to defendant Hahn's Motion to Dismiss and Alternative Motion for Summary Judgment. Dkt.# 38-1 at 9 – 10.

[26] Dkt.# 38-1 at 9 – 10.

It is apparent from the record that the plaintiff has greatly confused the dates and individuals he alleges have deliberately denied him timely care. As to defendant Proctor, plaintiff appears to allege that Proctor promptly ordered the modified barium swallow as soon as plaintiff arrived at HCC "in February, 2011" and urged Proctor to review his history. However, it is clear from the record that plaintiff arrived back at HCC on March 23, 2011, was there until September 23, 2011; left again, and arrived back at HCC again on October 14, 2011.[27] Thus, Proctor did not order the barium swallow until plaintiff had already been at HCC (for the third time) for almost six months.[28] Although plaintiff provides no medical records to show it, Proctor clearly had been following plaintiff for his swallowing difficulties for some time, because he noted plaintiff's history of the same on the April 5, 2012 barium swallow referral request.[29] The test was performed on April 20, 2012; the esophageal abnormalities were discovered; and the recommendation made in the report (presumably by the radiologist who discovered them) to refer plaintiff to a gastrointestinal ("GI") specialist for further testing and treatment. Nowhere does plaintiff suggest that after the April 20, 2012 barium swallow indicated a bona fide medical problem, the HCC defendants did not heed the radiologist's other recommendations, to provide him reasonable accommodations, including being permitted more time to eat, in order to eat slowly and alternate liquids with solids.[30] At least as early as May 23, 2012, Proctor made the recommendation to defendant Warden Plumley to refer plaintiff to a GI specialist. Warden Plumley apparently approved the referral to the GI specialist, at least by July 13, 2012, and shortly thereafter, plaintiff was scheduled for an appointment in August; the records indicate he was finally seen in late August, 2012.[31] He reports that he received the surgery in September, 2012. All

---

[27] Dkt.# 38-1 at 9 – 10.

[28] However, this point is moot, because plaintiff makes no allegation of deliberate indifference or denial of care by Proctor during that time.
[29] Dkt.# 1-6 at 2.

[30] Dkt.# 1-6 at 2.
[31] The gastroenterologist's office rescheduled his initial appointment from August 23, 2012 to August 27, 2012, indicating that they, too, did not consider it an emergency.

told, from the time plaintiff was first referred for the barium swallow to diagnose his problem, on April 5, 2012, it was only four months and three weeks until he was seen by a gastroenterologist, who, shortly thereafter, performed the needed surgery.

There is no evidence in the attached medical records to indicate deliberate indifference to plaintiff's esophageal issue, nor any other medical issue. To the contrary, the records indicate that the medical professionals at all three facilities were quickly responsive to plaintiff's many complaints and requests for medical care whenever he presented. While it can be assumed that whatever plaintiff's unspecified esophageal problem was, it was a serious medical need, because surgery was required, plaintiff has not shown that constitutional violation occurred; that any of the defendants showed deliberate indifference to medical needs diagnosed as mandating treatment; which obviously required medical attention; conditions which significantly affected his daily life activities, or conditions which caused pain, discomfort or a threat to good health. See Morales Feliciano v. Calderon Serra, *supra* at 341.

Rather, it appears that plaintiff is merely complaining because the treatment he wanted did not begin as quickly as he would have preferred, and he was unhappy with the type of care provided. However, it is apparent from the record that the plaintiff received prompt, timely and regular medical treatment. Apparently, the treatment was appropriate because he received medication, follow-up, testing, reasonable accommodations, timely referral to a specialist, and finally, corrective surgery. The mere fact that the plaintiff was dissatisfied with that treatment, or disagreed with the course of that treatment, is insufficient to support a claim of deliberate indifference. See Wright v. Collins, *supra* at 849. Accordingly, any claim against defendant Proctor of deliberate indifference to a serious medical condition must fail.[32]

---

[32] Even if the plaintiff's claims against Hahn did not fail otherwise, they would also fail because plaintiff did not comply with the requirements of W.Va. Code §§ 55-7B-3 and 55-7B-6.

Moreover, plaintiff's allegation that "the HCC defendants" told him he was going to be denied treatment, because he might be paroled on June 21, 2012  has a more reasonable explanation than a deliberate system-wide plot by the WVDOC to deny inmates care to save money. Non-emergency[33] specialist appointments are not obtained overnight; it is reasonable to expect a wait to be seen, and the defendants likely recognized that there was no point making an appointment that plaintiff would not be there to keep, should he be released on June 21, 2012.  Once it was learned that plaintiff did not make parole, a GI referral was made within twelve days.[34]

### 3. Defendants Debbie Minnix, Warden, Pruntytown Correctional Center; Marvin C. Plumley, Warden, Huttonsville Correctional Center; and William Yurcina, Administrator, Ohio County Correctional Center

Plaintiff's complaint alleges that the Warden defendants, by their repeated ignoring of  and/or denying the grievances of inmates with serious medical conditions who seek medical care, created an "across the board policy to systematically avoid the cost of" inmate's medical care, permitting the medical staff to completely deny treatment for inmates with serious medical needs.  He alleges that this unconstitutional policy caused a more than two-year delay in his receiving treatment for his esophageal problem, causing him to suffer "long term pain and permanent damage" to his esophagus and "voice box," which could have otherwise been avoided.[35]

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant

---

[33] Plaintiff's medical records do not indicate that he ever presented to medical with "agonizing pain" as he claims. Further, it is clear from the records that plaintiff's complaint has repeatedly made claims about the frequency and seriousness of his complaints that are factually very inconsistent with the contemporaneous medical records.  Further, the plaintiff's records indicate his weight was 235# on November 17, 2010 (Dkt.# 1-2 at 2)  and 238# on August 15, 2012 (Dkt.# 1-5 at 2), shortly before his first GI specialist appointment. It would appear that despite plaintiff's swallowing difficulties, he still managed to receive sufficient nutrition to sustain a three-pound weight gain in slightly less than two years.

[34] Dkt.# 1-7 at 3.

[35] (Dkt.# 1 at 2-3; Dkt.# 11 at 7 - 8).

which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a § 1983 case. Rizzo v. Good, 423 U.S. 362 (1976).

In this case, the plaintiff makes no specific allegations against the Warden defendants, indicating that they were involved in any violation of his constitutional rights, other than by their denying his grievances.[36] Rather, it appears that the plaintiff merely names them in their official or supervisory capacities as the Warden of their respective facilities. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)).

Although it is true that *pro se* complaints should be liberally construed, no matter how unskillfully pled,[37] here, although the plaintiff maintains it is his "assertion and belief"[38] that the WVDOC deliberately and purposefully skimps on providing inmates care for their serious medical needs because of prison overcrowding and lack of funds, nowhere does the plaintiff assert that any *official* policy or custom of the prison played a part in the alleged violation of his constitutional

---

[36] To the extent that the plaintiff may be implicitly asserting that the Warden defendants were deliberately indifferent to his needs by denying the administrative grievances he filed regarding his medical care, that claim is without merit because that is not the type of personal involvement required to state a claim. See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D. Md. March 31, 2003).

[37] Haines v. Kerner, 404 U.S. 519 (1972).

[38] Dkt.# 1, n.2 at 6.

rights. This claim, even when liberally construed, is merely a conclusory allegation; it is insufficiently pled and fails to state a claim upon which relief can be granted. Even when viewed with liberality, it contains insufficient facts to support a finding of any constitutional violation, let alone deliberate indifference by any of the Warden defendants. Conclusory allegations are insufficient to warrant an award of damages. Wise v Bravo, supra at 1333.

As to supervisory capacity, there is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, *supra*. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[39]

First, it would appear that Wexford is an independent contractor and defendants Dr. Proctor and Tristan Tenney are its employees. Therefore, as the warden of HCC, defendant Plumley is not a supervisor of defendants Proctor and Tenney; nor is defendant Minnix a supervisor of any Wexford

---

[39] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

employee who provided inmate medical care at the PCC. Likewise, PrimeCare Medical, Inc. ("PrimeCare") is an independent contractor that contracted with defendant Dr. Hahn to provide medical care to inmates at OCCC through it; thus, as warden of the OCCC, defendant Yurcina is not a supervisor of defendant Dr. Hahn. Moreover, even if the court were inclined to view the Warden defendants as the supervisors of defendants Proctor, Tenney, and Hahn (collectively, "the medical personnel defendants"), the plaintiff fails to make any allegations which reveal the presence of the required elements for supervisory liability. Consequently, the plaintiff fails to state a claim against any of the Warden defendants,[40] and they should be dismissed with prejudice as defendants in this action.

### 4. Dr. John Doe, Pruntytown Correctional Center

Plaintiff initiated this action on December 11, 2012. On March 6, 2013, summonses were issued for the other named defendants; plaintiff was directed to provide identifying information for defendant Dr. John Doe within thirty days. Plaintiff did not provide the information then and has made no attempt to provide it since. Accordingly, service could not be effected on defendant Dr. John Doe.

It has been nearly eight months since plaintiff filed his complaint. Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good

---

[40] Even if the claim against defendant Yurcina was not already recommended for dismissal on the grounds stated *supra*, it too is also time-barred under W.Va. Code §55-2-12(b). The plaintiff was transferred out of OCCC on June 8, 2010 and did not file his complaint with the allegations against Yurcina until December 11, 2012, over six months past the expiration of W.Va. Code §55-2-12(b)'s two-year statute of limitations for personal injury actions.

cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); see also, Bush v. City of Zeeland, 74 Fed. Appx. 581, 2003 WL 22097837 at *2 (6th Cir. 2003)(citations omitted).

Here, plaintiff was originally notified by Order of this Court, almost three months after filing his complaint, that he had an additional thirty days in which to identify defendant Dr. John Doe; he failed to do so. He has had more than sufficient time to provide correct information in order to effectuate service on defendant Dr. John Doe in this action. Noting plaintiff's lack of diligence in doing so, the undersigned recommends that the plaintiff's claims against defendant Dr. John Doe be dismissed for failure to timely effect service.

## B. <u>Mootness</u>

A federal court lacks authority to "give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." <u>Church of Scientology of California v. United States</u>, 506 U.S. 9, 12 (1992) (*quoting* <u>Mills v. Green</u>, 159 U.S. 651, 653 (1895). A case becomes moot when the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." <u>Murphy v. Hunt</u>, 455 U.S. 478, 481 (1982) (*quoting* <u>United States Parole Comm'n v. Geraghty</u>, 445 U.S. 333, 396 (1980). When a prisoner is released from prison, there is no longer a "substantial controversy" between the former inmate and prison officials "'of sufficient immediacy and reality'" to warrant the issuance of either injunctive or declaratory relief. <u>Inmates v. Owens</u>, 561 F.2d 560, 562 (4th Cir. 1977)(quoting <u>Golden</u>, 394 U.S. at 108); see also <u>Scher v. Chief Postal Inspector</u>, 973 F.2d 682, 683 (8th Cir. 1992); <u>Clay v. Miller</u>, 626 F.2d 345, 347 (4th Cir. 1980)(per curiam). However, a prisoner's subsequent transfer from a complained-of prison, while it moots a request for declaratory and injunctive relief, it does not moot a request for money damages. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991) *quoting* <u>Taylor v. Rogers</u>, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986). Moreover, even in the absence of a showing of actual injury, a prisoner would still be entitled to nominal damages upon proof of a

constitutional violation.  <u>Gray v. Spillman</u>, 925 F.2d 90, 93 – 94 (4th Cir. 1991).  Here, plaintiff was paroled on March 1, 2013.  Because he has proved no constitutional violation against any of the defendants, any claim he makes for monetary damages against any of them is moot as well.

## V.  <u>Recommendation</u>

In consideration of the foregoing, it is the undersigned's recommendation that the defendants Proctor and Tenney's Motion to Dismiss be **GRANTED** (Dkt.#  36); defendant Hahn's Motion to Dismiss and Alternative Motion for Summary Judgment be **GRANTED** (Dkt.# 38); defendants Minnix, Plumley, and Yurcina's Motion to Dismiss be **GRANTED** (Dkt.# 40) and the plaintiff's complaint (Dkt.# 11) be **DISMISSED with prejudice.**

Any party may file **within fourteen (14) days** after being served with a copy of this Recommendation with the Clerk of the Court, **or by August 21, 2013**, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the United States District Judge.  **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985) <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to counsel of record electronically.

Dated:  August 7, 2013

<u>/s/ James E. Seibert</u>
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE